Joshua J.C. Ulloa
Reg No. 02758-093
United States Penitentiary LOMPOC
3901 Klein Blvd.
Lompoc, California 93436-2706

Pro Se.

FILED
DISTRICT COURT OF GUAM

DEC 06 2010

JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT GUAM
(HAGATNA)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>     Respondent, )<br>     )<br>     -vs- )<br>     )<br>     )<br>JOSHUA J.C. ULLOA, )<br>     Petitioner. ) | Civil No. _____<br><br>D.C. No. 1:07-cr-00111-1<br>         1:08-cr-00013<br><br>(Chief Judge Tydingco-Gatewood) |

E X H I B I T   A  THUR. C.

**E X H I B I T ( A )**

## PART A—THE OFFENSE

### Charge(s) and Conviction(s)

1. On December 19, 2007, the Federal Grand Jury for the District of Guam returned a True Bill, which charged Joshua J.C. Ulloa, with the offense, to wit: Count I: Drug User in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The Indictment, docketed under CR 07-00111, alleges that on or about October 9, 2007, in the District of Guam, the defendant, then being an unlawful drug user of a controlled substance, did knowingly receive a firearm described as follow: an Auto-Ordinance, Thompson Model .45 caliber pistol, serial number A0C26750, which had been transported in interstate commerce. A warrant of arrest was issued and the case was sealed.

2. On December 21, 2007, the arrest warrant of the defendant was executed and he was brought before the Honorable Joaquin V.E. Manibusan Jr., U.S. Magistrate Judge, District Court of Guam, for an Initial and Arraignment hearing. Attorney Curtis Van De Veld was appointed to represent him. By and through counsel, he entered a plea of not guilty to the Indictment. Jury trial was scheduled for February 19, 2008. The defendant was released with conditions. At this time, the case was unsealed.

3. On January 7, 2008, the defendant was arrested by Guam Police officers and charged in the Superior Court of Guam with six counts of felony Child Abuse. Superior Court of Guam CF 6-08. The arrest arises from a manufacturing of methamphetamine allegation that had occurred at the defendant's residence in Asan, Guam.

4. On February 13, 2008, the Federal Grand Jury for the District of Guam charged the defendant, along with Christine M. Duenas, Jonathan Ninete, and Vanessa Tenorio with the offenses, to wit: Count I: Conspiracy to Manufacture Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count II: Aiding and Abetting the Attempted Manufacture of Methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846; and Count III: Establishment of Manufacturing Operations, in violation of 21 U.S.C. §856(a)(2). The defendant is named in all three counts.

5. The Indictment, docketed under USDC CR 08-00013, alleges that beginning in about September 2007, an exact date unknown, and continuing thereafter to and until January 7, 2008, in the District of Guam and elsewhere, the defendants, and other co-conspirators both known and unknown, did unlawfully, knowingly, and intentionally combine, conspire, and agree together with each other to manufacture in excess of 5 grams, net weight, of methamphetamine hydrochloride, a Schedule

3

II controlled substance. Moreover, the defendant and Christine Duenas, while managing and controlling a building at 26 Consolacion Street, Asan, Guam, as lessees, knowingly and intentionally made available for use with and without compensation, the building for the purpose of unlawfully manufacturing methamphetamine hydrochloride.

6. On February 14, 2008, at a pretrial conference in USDC CR 07-00111 before the Honorable Frances M. Tydingco-Gatewood, U.S. District Judge, District Court of Guam, the parties requested a continuance of trial on an ends of justice motion. The court granted the motion and continued the trial date to March 14, 2008.

7. On February 20, 2008, the defendant appeared for Initial and Arraignment hearing via Writ of Habeas Corpus Ad Prosequendum before Judge Tydingco-Gatewood. By and through his attorney, he pleaded not guilty to the offenses. Trial was set for April 8, 2008 and the defendant was detained.

8. On March 11, 2008, the case was recalled for a Change of Plea hearing before the Magistrate Judge. Pursuant to a plea agreement, the defendant consented to plead guilty to Counts 1 in each of the two Indictments. The court found that the guilty plea was knowingly and freely made and recommended to the District Judge that the defendant's guilty plea be accepted. At the request of the parties, the case was continued to a status hearing. On April 8, 2008, the District Judge accepted the Magistrate Judge's recommendation and adjudged the defendant guilty of the offenses.

9. On September 4, 2008, a stipulated motion to vacate the status hearing and set a sentencing date was granted by the court. The sentencing hearing was set for December 11, 2008. The court also ordered the U.S. Probation Office to conduct an investigation and submit a presentence report to the parties by November 6, 2008. The defendant remained in custody without bail.

10. On November 17, 2008, the court granted a request from the probation officer for additional time to complete the investigation and presentence report. The sentencing hearing was moved to January 30, 2009 and the presentence report was ordered to be submitted to the parties by December 30, 2008.

**Co-defendants**

11. <u>U.S.A. vs. Christine Duenas</u>
U.S.D.C. CR08-00013-002

Offense: <u>Count III</u>: Establishment of Manufacturing Operations, in violation of 21 U.S.C. § 856(a)(2). A maximum term of 20 years imprisonment / 500,000 fine. A Class B felony.

4

|  |  |
|---|---|
| Status: | Sentencing on January 14, 2009 |
| Release Status: | Personal Recognizance bond |

*57 months*

12. U.S.A. vs. Jonathan Ninete
U.S.D.C. CR08-00013-002

Offense: Conspiracy to Manufacture Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846.

Status: Sentenced on September 16, 2008 to serve 71 months imprisonment and four years supervised release.

13. U.S.A. vs. Vanessa Tenorio
U.S.D.C. CR08-00013-004

Offense: Count I: Conspiracy to Manufacture Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

|  |  |
|---|---|
| Status: | Sentencing on January 20, 2009 |
| Release Status: | Personal Recognizance bond |

*time ?*

**Related Cases**

14. U.S.A. vs. Christopher Grantham
U.S.D.C. CR07-00107-001

Offense: Attempted Manufacturing of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & 846.

|  |  |
|---|---|
| Status: | Sentencing on January 20, 2009 |
| Release Status: | Detained |

*time ?*

**Pretrial Adjustment**

15. On December 21, 2007, the defendant was arrested pursuant to a warrant issued by the District Court in CR 07-00111. He was brought before the U.S. Magistrate Judge and subsequently released on a personal recognizance bond with conditions. On January 7, 2008, the defendant was arrested by local law enforcement agents and charged with felony child abuse following the discovery of a clandestine methamphetamine manufacturing lab at his Asan residence. On January 31, 2008, the defendant's release on recognizance was revoked and he was ordered to detention for the pendency of USDC CR 07-00111. On February 20, 2008,

following his initial appearance and arraignment hearing in USDC CR 08-00013, the court ordered him held without bail. As of January 30, 2009, the defendant has been in custody for approximately 388 days.

### The Offense Conduct

16. The facts of the cases are from reports of the U.S. Drug Enforcement Administration (DEA) and the Guam Police Department (GPD), and are summarized as follows:

### 07-00111-001

17. On October 9, 2007, Ulloa and Christine Duenas were arrested by the Guam Police Department in connection with a search of a clandestine methamphetamine laboratory operated by Johnnie Fortner and Kelly Francisco. Drug Enforcement Administration (DEA) agents interviewed Ulloa at the Hagatna Precinct where he gave agents permission to search his residence located at 26 Consolacion Street, Asan, Guam. Later that evening, Drug Enforcement Administration (DEA) Special Agent (SA) K. Bowman and DEA Task Force Officers (TFO) D. Taitano and F. Gutierrez conducted a consensual search of the residence of Christine Duenas and Joshua Ulloa residence. The search of the residence was conducted in the presence of Ulloa and Duenas. Agents found a Thompson, model .45 caliber pistol, serial number AOC26750 and seven rounds of .45 caliber in the bushes located in the backyard of the residence. Ulloa stated that he obtained the firearm from Jason Senesi prior to Senesi's federal incarceration for a drug offense. Agents did not arrest Ulloa or Duenas.

18. According to police records, the original owner of the firearm was Melvin Quinene who transferred the pistol to Lawrence Babin. Investigation revealed that Babin left Guam and gave a power of attorney to his son to sell the pistol. Mr. Babin's son had sold the pistol, but a transfer of the registration was not recorded.

### 08-00013-001

19. On January 7, 2008, Drug Enforcement Administration (DEA) Special Agents (SA) Task Force Officers (TFO) received information from a Source of Information (SOI) that Christopher Grantham a suspected drug trafficker was residing with Joshua Ulloa and Christine Duenas at their residence, 26 Consolacion Court, Asan, Guam. The SOI stated that Grantham was manufacturing methamphetamine at the residence and had solicited the SOI for assistance in obtaining Sudafed, an ingredient necessary in the manufacturing of the drug.

20. On the same date, DEA personnel, with the assistance of the Guam Police Department proceeded to the Ulloa and Duenas residence in Asan to arrest Grantham on a federal warrant. Officers knocked on the door and announced their

6

presence. Ulloa and Duenas opened the door and were asked to step outside. Officers inquired with Ulloa if Grantham was in the residence to which Ulloa replied that he was not. After being told that officers had information that Grantham was inside the residence Ulloa was again asked if Grantham was in the residence. Ulloa turned to Duenas and inquired if she knew, however, she did not answer. Officers proceeded to ask Ulloa for permission to search the residence which he stated "yes."

21. Officers proceeded into the home and immediately noticed a strong chemical odor in the residence. As they continued to the second floor, officers noted the chemical odor to be more prevalent. They entered a bedroom and found a small graduated beaker situated on top of an open closet shelf. Grantham was subsequently discovered in another bedroom. He was ordered to the ground to which he complied. A check of the remaining rooms in the residence revealed five small children sleeping in the master bedroom with an acetone can on the floor in the same room. The children were removed from the residence and transported to the Juvenile Investigation Section (JIS) of the Guam Police Department. Another individual, Jonathan Ninete was found in another bedroom of the house. Ultimately the four individuals were transported to the DEA Guam Resident Office for questioning. Officers also discovered a burnt pile consisting of solvent cans and trash bags outside to the rear of the residence. The residence was secured pending the arrival of a federal search warrant to continue the search.

22. Alvina Ulloa, mother of Joshua Ulloa, assisted in the transportation of the five minor children to JIS. Upon arrival, Child Protective Services (CPS) was advised of the situation. The children were initially transported to the Guam Memorial Hospital for possible inhalation and contamination from harmful fumes. However, they were unable to been seen due to an overcrowding situation at the Emergency room and they were instead taken to the Northern Public Health Center. Blood tests were conducted on all five children with negative results. The children were subsequently released to family members upon approval of CPS.

23. Following the arrest of Christopher Grantham, officers found two improvised straws in his left front shorts pocket which contained an off-white chunky substance. Agents field tested the substance which yielded a presumptive positive result for methamphetamine. Agents advised Grantham of his Miranda rights. Grantham acknowledged that he understood his rights and agreed to cooperate.

24. Grantham told officers that he had been living with Ulloa and Duenas in Asan, Guam, for the past month. He admitted to cooking "Ice" at the residence about five times. The last time he cooked "Ice" was on January 4, 2008 in the upstairs bedroom. Grantham also admitted to cooking "Ice" on December 31, 2007.

7

25. Grantham stated that inside of the residence, particularly in the bathroom and kitchen, were solvents used for cooking, such as acetone, denatured alcohol and drain cleaner. He also stated that there was a black trash bag and a black suitcase hidden behind the residence which contained items that he used to cook "Ice," to include glassware, red phosphorous, and iodine.

26. Grantham stated that Ulloa allowed him to cook "Ice" at the residence in exchange for "Ice" for himself. Grantham stated that each time he cooked "Ice" he made approximately 5 grams. From the last cook, Grantham, Ulloa, and others smoked the majority of it and sold 1 gram of "Ice."

27. Grantham stated that Jonathan Ninete was a "gopher" for Ulloa. When Grantham needed supplies for the cook, Ulloa would send Ninete to pick up the supplies. Grantham stated that Duenas did not assist with any of the cooks, but she knew that they were cooking "Ice" at the residence. Grantham stated that Duenas had complained about the chemical odors in the residence, which made him move the black suitcase and trash bag outside.

28. Grantham told officers that the glassware in the black suitcase and the trash bag belonged to Vanessa Tenorio. He stated that on the last cook he did on Friday, January 4, 2008, Tenorio assisted him. Grantham also admitted to cooking "Ice" with Tenorio at her residence on Saturday, January 5, 2008. The cook yielded approximately 7 grams of "Ice." Grantham stated that Jerry Taitano and an individual known only as Ed, later identified as Edward Enoki, were at Tenorio's residence during the cook.

29. Later that day, after obtaining a search warrant for Ulloa and Duenas' residence, officers conducted a more thorough search of the premises. The following items were seized as a result of the search:

   1. Exhibit 26 - Described as two plastic bags, containing white cloths with off-white powdery substance (approximately 93gg) located in a black suitcase, which was in the foliage area, east of the residence.

   2. Exhibit 27 - Described as brown coffee filters and white cloth with off-white chunky substance (approximately 44gg) located in a black suitcase, which was in the foliage area, east of the residence.

   3. Exhibit 28 - Described as one Malgene 16 oz plastic bottle, containing a zip-lock bag, further containing a red powdery substance (approximately 109gg) located in a black suitcase, which was in the foliage area, east of the residence.

4. Exhibit 29 - Described as a plastic bag containing green seeds of suspected marijuana (approximately 28gg) located in a plastic bowl, which was in the master bedroom closet.

5. Exhibit 30 - Described as 2 small improvised plastic straws, containing off-white residue substance (approximately 24gg) located in a small silver jewelry box, which was in the northeast bedroom. Agents field tested Exhibit 30, with a presumptive positive result for methamphetamine.

6. Exhibit 31 - Described as bi-layer liquids with sediment, approximately 84.5gg, with a PH of 17 located in the downstairs bathroom, in the sink cabinet.

7. Exhibit 32 - Described as red liquid substance, approximately 91.0gg, with a PH of 4 located in the downstairs bathroom, in the sink cabinet.

30. Also located in the Ulloa and Duenas' home were the following items determined to be consistent with items found in a clandestine laboratory, to include equipment, apparatus and chemicals.

1. One (1) pint Pyrex cup
2. One (1) quart of S-L-X Denature alcohol
3. One (1) Ace propane fuel
4. One (1) Cylinder Torch
5. One (1) black trash bag
6. One (1) 250 ml Pyrex long neck beaker
7. One (1) 50 ml Pyrex short neck beaker
8. One (1) Coleman 5 gallon plastic water container
9. One (1) improvised plastic cork
10. One (1) Vision cooking pot
11. One (1) American Weigh digital scale
12. One (1) 1/2 case of Commando matches (40 boxes, each containing 10 boxes)
13. One (1) Sunny Side Denature alcohol, I/B full
14. Four (4) full bottles of hydrogen peroxide, 16 02
15. One (1) 400 ml Pyrex container
16. Two (2) packages of small zip-lock bags
17. One (1) bottle of unknown liquid, marked with lid
18. One (1) gallon milk jug with unknown red liquid, 1/8 full
19. One (1) gallon milk jug with unknown bi-layer of liquids, 1/8 full
20. One (1) small glass bowl
21. Twelve (12) full bottles of iodine tincture (Humco brand),
22. One (1) purple cup with small jar of muriatic acid, 1/3 full
23. One (1) plastic bag with assorted wrappings of coffee filters and rags with white residue substance
24. One (1) plastic bag with roll of tapes
25. Assorted glassware

9

26. One (1) bottle unknown liquid
27. One (1) 15 ml beaker
28. One (1) quart of Super strip brand stripping chemical
29. One (1) empty can of S-L-X denature alcohol
30. One (1) Aquachek Ph strips container, 50 counts
31. Three (3) empty cans of Coleman fuel
32. One (1) empty can of lantern fuel
33. Four (4) empty bottles of hydrogen peroxide, 16 oz
34. Two (2) empty bottle of iodine tincture, 2 oz
35. One (1) empty 16 oz bottle of Agrilabs iodine tincture

31. Following the search, South Pacific Environmental company arrived at the residence for cleanup of the site. Afterward, DEA agents secured the residence and provided a written listing of the items seized to Ulloa. Ulloa was arrested by the Guam Police Department and charged with child abuse, reckless endangerment and child endangerment. While at the Juvenile Investigation Section of the Guam Police Department, Sgt. A. Paulino advised Ulloa of his constitutional rights which he acknowledged and invoked. His interview was terminated at that time.

32. Later that evening, at the DEA office, Jonathan Ninete was advised of his constitutional rights which he acknowledged and waived. Ninete admitted that he and others cooked "Ice" at Ulloa's home while the children were upstairs on three or four occasions. Ninete stated that other than the five children, there was another minor in the home, his girlfriend, Kea Sablan, age 17. Ninete admitted that Sablan would sometimes smoke marijuana and "Ice" with them at the residence.

33. Sgt. Paulino proceeded to interview Christine Duenas. She was advised of her constitutional rights, which she acknowledged and waived. Duenas initially stated that she had no idea that Ulloa and others were manufacturing "Ice" in the home. She stated that she would smell the odors and inquire what it was, but was told "you don't need to know." Duenas continued to deny knowledge of drugs being made in her home and stated that she had no reason to suspect Ulloa's activities. At some point during the interview, Duenas began to cry and told officers that she did smoke "Ice" and the last time was two months ago. She recanted her previous statements and said that she knew Ulloa and Grantham were making "Ice" at the residence. Duenas knew that the chemicals being brought into her home were chemicals needed to make the drug. She recalled smelling the chemical odor on at least three occasions, but if she were to inquire about it, she was told to mind her own business. Duenas stated that she never saw them actually cooking methamphetamine but knows that they did because of the items around the house. She further stated that she has never seen Ulloa sell "Ice," but assumes he does because she is able to buy things they could not otherwise afford. Duenas implicated Ulloa and the others of manufacturing methamphetamine and she was placed at the Alee Shelter (women's shelter) pending a further investigation.

10

34. The following day, Duenas returned to JIS and was reminded that her constitutional rights still applied. Duenas denied ever giving "Ice" to Kealani Gerbhart, a minor, who often assisted her with babysitting the children and is the girlfriend of Jonathan Ninete. However, she has seen Gebhart smoking with Ninete. Duenas also denied smoking "Ice" with Gebhart. At the interview's conclusion, Duenas was arrested for 9 counts of Child Abuse, 6 counts of Reckless Endangerment, and 6 counts of Child Endangerment. She was transported to the Hagatna Detention Facility, booked, and later confined at the Women's Facility in Mangilao.

35. As the investigation into the clandestine methamphetamine laboratory continued, DEA obtained photo copies of the Mega Drug Pharmacy log book documenting the purchase of over-the-counter medications that contained pseudoephedrine. The records showed that from November 1, 2007 to December 31, 2007, Grantham, Ulloa, Duenas, and Ninete made numerous purchases of Sudafed from the Tamuning store. The records reflected the following information.

| Date | Name | Quanity | Type |
|------|------|---------|------|
| 11-12-07 | GRANTHAM | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 11-27-07 | GRANTHAM | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 12-01-07 | DUENAS | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 12-13-07 | ULLOA | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 12-18-07 | DUENAS | 1 box | Claritin - 5 tablets |
| 12-28-07 | NINETE | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 12-31-07 | ULLOA | 1 box | Sudafed, 24 hrs. - 10 tablets |
| 12-31-07 | GRANTHAM | 1 box | Sudafed, 24 hrs. - 10 tablets |

36. DEA also discovered that on September 5, 2007, Ninete and Grantham were photographed together at Quality Swimming Pools purchasing PH strips. On October 31, 2007, a photograph of Grantham was taken as he purchased more Ph strips.

## Victim-Related Adjustment

37. None.

## Adjustment for Role in the Offense

38. None.

### Adjustment for Obstruction of Justice

39.   None.

### Adjustment for Acceptance of Responsibility

40.   The defendant was interviewed in the presence of his attorney. He made the following statement, "I wish I was never involved, I regret everything and all the bad choices I made, I'm truly sorry."

41.   The probation officer has determined that the defendant accepted responsibility for his criminal action in both offenses and a decrease of the offense level, pursuant to U.S.S.G. §3E1.1, will be applied.

### Offense Level Computation

42.   The 2008 edition of the United States Sentencing Commission Guidelines Manual was used in this case.

43.   According to U.S.S.G. §3D1.1(a), when a defendant is convicted of more than one count, the Court shall group the counts resulting in conviction into distinct Groups of Closely Related Counts by applying the rules specified in §3D1.2. U.S.S.G. §3D1.2 directs that all counts involving substantially the same harm shall be grouped together into a single Group. In these cases, Count I in Criminal Case Number 07-000111 and Count I in Criminal Case Number 08-00013 constitute separate harms and are excluded from the operation of U.S.S.G. § 3D1.2, and therefore constitute distinct Groups. The offense level applicable to each Group is determined by applying the rules specified in U.S.S.G. § 3D1.3. The combined offense level applicable to both Groups is determined by applying the rules specified in U.S.S.G. § 3D1.4.

**Group I**
**Cr. Case. No. 07-00111**
**Count I: Drug User in Possession of a Firearm**

44.   **Base Offense Level:**  The guideline for a 18 U.S.C. 922(g)(3) and 924(a)(2) offense is found under § 2K2.1. The base offense level is set forth in § 2K2.1(a)(6), which corresponds to a  base offense level of fourteen as the defendant was a prohibited person at the time he committed the instant offense.      <u>14</u>

45.   **Specific Offense Characteristics:** None.      <u>0</u>

46.   **Victim Related Adjustment:** None.      <u>0</u>

12

47.  **Adjustment for Role in the Offense:** None

0

48.  **Adjustment for Obstruction of Justice:** None.

0

49.  **Adjusted Offense Level (Subtotal):** Fourteen

**14**

### Group II
### Cr. Case No. 08-00013
### Count I: Conspiracy to Manufacture Methamphetamine

50.  **Base Offense Level:** The guideline section for Conspiracy to Manufacture Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 is found under § 2D1.1, Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy. The base offense level is set forth in § 2D1.1(a)(3), which refers to the Drug Quantity Table under subsection (c). The parties stipulated in the plea agreement that the defendant conspired with others to manufacture in excess of five grams, net weight, of methamphetamine hydrochloride, a Schedule II Controlled Substance. Under the Drug Quantity Table of §2D1.1, the amount of methamphetamine that is at least 5 grams corresponds to a base offense level of sixteen.

16

51.  **Specific Offense Characteristics:** The underlying offense involved the manufacture of methamphetamine and it created a substantial risk of harm to five minors, therefore pursuant to § 2D1.1(10)(D), the offense level is increased by six or if the resulting offense level is less then 30, increase to level 30. The resulting offense level is therefore increased to level 30.

? **30**

52.  **Victim-Related Adjustments:** None.

0

53.  **Adjustment for Role in the Offense:** None.

0

54.  **Adjustment for Obstruction of Justice:** None.

0

55.  **Adjusted Offense Level (subtotal):** Thirty.

30

56.  **Determining the Combined Offense Level:** Pursuant to the U.S.S.G. §3D1.4, the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated by the number of units.

57.  **Adjusted Offense Level for Group II of Closely Related Counts:** As this Group constitutes the highest offense level, one unit is counted. U.S.S.G. §3D1.4(a).

1 unit

13

58. **Adjusted Offense Level for Group I of Closely Related Counts**: As this Group is more than nine levels less serious than Group I, no unit is applied.  **0 unit**

59. **Total Units**:  **1**

60. **Increase in Offense Level**: None.  **0**

61. **Highest of the Adjusted Offense Level**: Thirty.  **30**

62. **Combined Adjusted Offense Level**: Thirty  **30**

63. **Adjustment for Acceptance of Responsibility**: The defendant demonstrated an acceptance of responsibility for his criminal conduct and qualifies for a two level decrease of the offense level under U.S.S.G. § 3E1.1(a). The government has not indicated if the defendant warrants an additional one level decrease pursuant to § 3E1.1(b).  **-2**

64. **Total Offense Level**: Twenty-eight.  **28**

27

**Offense Behavior Not Part of Relevant Conduct**

65. On October 24, 2007, Guam Police Department received information about a possible methamphetamine laboratory located in room 46, Plumeria Garden Hotel, Route 8, Maite, Guam. Officers proceeded to room 46 where they knocked on the door several times before the door was opened by Tamara Santos. Officers saw a second individual, identified as Simone Lewallen, walk up behind Santos and noticed a third individual closing the bathroom door. Officers asked Ms. Santos who that person was to which she replied, "I don't know." Officers asked Ms. Santos if they could conduct a cursory search of the room which she agreed and consented to the search.

66. Officers entered the room to begin the search and knocked on the bathroom door several times before a male subject, later identified as Christopher Grantham, responded and opened the door. Grantham was detained by officers as they continued their search. Officers found a fourth individual in the room lying on the floor on the right side of the bed, who was later identified as Joshua Ulloa. Ulloa was detained as the search continued. A search of the room noted the following: a black backpack on the balcony, empty plastic containers (one gallon jugs) and acetone in the bathroom, an electric burner on one side of the bed, a glass pan on the other side of the bed, and empty plastic containers consistent with methamphetamine manufacturing. Grantham, Santos, Lewallen, and Ulloa were all detained and transported to the DEA Guam Resident Office for further

14

questioning. Grantham stated that he, Santos, Ulloa, and Lewallen all smoked "Ice" in room 46 of the Plumeria Garden Hotel that night. They were released later in the evening.

# PART B—DEFENDANT'S CRIMINAL HISTORY

## Juvenile Adjudications

67.   None.

## Adult Criminal Convictions

68.

| Date of Arrest | Charge/Court | Date Sentenced / Disposition | | |
|---|---|---|---|---|
| 10/14/99 | Count I: Operating a Vehicle while Intoxicated; Count II: Improper Lane Usage, Leesville Sheriff's Department / 30TH Judicial District Court, Leesville Louisiana Cs. No. 57273-274 | 12/6/99- Pled guilty and sentenced to six months probation, two days jail, and a fine 9/30/04- Warrant of Arrest issued for probation violation | §4A1.2(c) §4A1.2(d) | 1 2 |

On December 6, 1999, the defendant pled guilty after waiving his right to counsel in 30TH Judicial District Court, Parish of Vernon, Leesville Louisiana to Count I: Operating a Vehicle while Intoxicated and Count II: Improper Lane Usage. He was sentenced to 60 days imprisonment which was suspended except for two days, and pay a $450.00 fine for Count I; and was sentenced to 10 days imprisonment which was suspended and a $50.00 fine for Count II. He was also placed on six months of supervised probation for both counts.

On May 8, 2000, a bench warrant was issued for the defendant due to failing to pay his fine, serve two days of incarceration or four days of community service, complete driver's education and substance class and pay a $25.00 monthly supervision fee. The warrant is still active.

69.

| Date of Arrest | Charge/Court | Date Sentenced / Disposition | | |
|---|---|---|---|---|
| 12/17/03 | Driving while Under the Influence. Police Report 03-20593/Superior Court of Guam Criminal case no. CM-1045-03 | 3/24/05- 48 hours imprisonment/ two years probation | §4A1.2(c) | 1 |

On December 17, 2003, Guam Police Officers observed a red 1992 Chevrolet Cavalier, Guam License plate TAL2307, pull out of the residence at #238 Machuate Street, Toto speeding down the roadway with its headlights off. Officers attempted to pull the vehicle over, however, the car pulled off of the shoulder and the driver fled on foot into the jungle. Officers were able to apprehend him and he was later identified as Joshua Jerome Ulloa. Officers smelled an alcoholic beverage on Ulloa's breath and noticed that his eyes were watery and bloodshot. Ulloa admitted he had been drinking beer. He refused to perform the Standardized Field Sobriety Test. Ulloa submitted to a Breath Test which yielded a B.A.C. reading of 0.128 percent. He admitted to driving the car from his father's residence at #238 Machuate Street. Ulloa was booked and confined. On December 18, 2003, the defendant was charged in the Superior Court of Guam with Driving while Under the Influence, as a misdemeanor.

On March 11, 2004, Ulloa appeared before the Honorable Alberto C. Lamorena in the Superior Court of Guam for a Change of Plea hearing. By and through counsel, the Public Services Corporation, pleaded guilty to Driving Under the Influence. On March 24, 2005, he was sentenced to two days imprisonment with two years of probation. On June 21, 2007, the defendant completed his term of probation.

## Criminal History Computation

70.     The defendant receives one criminal history point in paragraph 68 pursuant to U.S.S.G. § 4A1.1(c) since the prior sentence, occurring within the applicable time period, was not counted in (a) or (b). He also receives another two criminal history points pursuant to U.S.S.G. § 4A1.1(d) comment. (n.4) he committed the instant offense while on an absconder status for violation of probation.

71.     The defendant receives one criminal history point in paragraph 69 pursuant to U.S.S.G. § 4A1.1(c) since the prior sentence, occurring within the applicable time period, was not counted in (a) or (b).

72.     The defendant has four criminal history points, which establishes a Criminal History Category III.

## Inadequacy of Criminal History Category

73.     Pursuant to 4A1.3(a)(1), the defendant may warrant an upward departure as the Criminal History Category under-represents the seriousness of his criminal history. Pursuant to 4A1.3(2)(A) and (D), the basis for the upward departure is that the has

16

a prior DUI sentence not used in computing his Criminal History Category. Also, the defendant committed the instant drug offense while under indictment and awaiting trial on felony forgery charges.

## Pending Charges

| Date of Arrest | Offense | Agency | Disposition |
|---|---|---|---|
| 74. 10/24/07 | Forgery (as a 3rd degree felony) | Guam Police Department 07-29429 Superior Court of Guam CF 508-07 | Further Proceedings hearing 1/28/09 |

On October 24, 2007, Roland Bello Pono, who handles payroll and accounting for Celebrity Bakery (victim), Mangilao, Guam, notified Guam Police that several checks had been written on the company's First Hawaiian Bank checking account without authorization. Police investigation showed that one of the checks, #9192 in the amount of $2,627.97, was cashed at Rustain's Foreign Exchange, Guam, and endorsed by Joshua Jerome Ulloa. Police review of the surveillance video at Rustain's Foreign Exchange showed Ulloa cashing the check on October 16, 2007. Guam Police located Ulloa and advised him of his rights. Ulloa stated that he had been asked to cash the Celebrity Bakery check by a person named "Dez" and in return he would receive a portion of the amount of the check. According to Ulloa "Dez" needed another person to cash Celebrity Bakery check, so Ulloa called a "Mark Mayo" and asked if would like to participate also. Rustain's Foreign Exchange confirmed that a First Hawaiian Bank celebrity bakery account check made out to a "Mark Mayo" for approximately $3,000.00 had attempted to be cashed but that Rustain's Foreign Exchange had refused to cash it after checking with Celebrity Bakery and that "Mark Mayo" had taken the check and left. A photocopy of a First Hawaiian Bank Celebrity Bakery account check made out to a "Mark Mayo" in the amount of $3,140.00 was located in the wallet of Ulloa. He stated that "Mark Mayo" was unsuccessful at cashing the check at Rustain's Foreign Exchange and had returned the check to him. Ulloa admitted cashing the First Hawaiian Bank/Celebrity Bakery account check number 9192 in the amount of on the $2,627.97. Ulloa denied signing the name of Roland Bello Pono on the checks or writing in the amount. Ulloa alleged that this was done by "Dez."

On November 1, 2007, the Superior Court of Guam Grand Jury returned a True Bill which charged the defendant with the Theft and Solicitation to Commit Theft (both as a 2nd degree felony), docketed under CF 508-07. The defendant is detained. On December 15, 2008, the Superior Court of Guam

17

Grand Jury returned a True Bill which charged the defendant in a Superceding Indictment with three counts of Forgery as 3rd degree felonies. A further proceedings hearing before Judge Michael Bordallo is scheduled for January 28, 2009.

| | Date of Arrest | Offense | Agency | Disposition |
|---|---|---|---|---|
| 75. | 1/8/08 | Child Abuse (Six Counts as a 3rd degree felony) | Guam Police Department 08-00650 Superior Court of Guam CF 0006-08 | Further Proceedings hearing 1/28/09 |

On January 8, 2008, the defendant was arrested by the Guam Police Department for Child Abuse. This arrest is based on conduct related to the instant offense. On January 9, 2008, the defendant was charged with a Complaint in the Superior Court of Guam with six counts of Child Abuse in violation of 9 Guam Code Annotated § 3130(a)(2)(C) and (b). On January 17, 2008, the Superior Court of Guam Grand Jury returned a True Bill which charged him with the same offenses as in the Complaint. The defendant is detained. The court docket reflects the further proceedings hearing in CF 508-07 for this case.

## Other Criminal Conduct

| | Date of Arrest | Charge | Disposition |
|---|---|---|---|
| 76. | 11/18/05 | Robbery/Theft (both as 2nd degree felonies) Police Report 05-24730/ Superior Court of Guam Criminal case no. 431-05 | 2/20/07- Dismissed without prejudice |

On November 25, 2005, the Superior Court of Guam Grand Jury returned a True Bill which charged the defendant with the Theft and Robbery (both as a 2nd degree felony), docketed under CF 431-05. The Indictment alleges that on November 6, 2005, the defendant unlawfully used force against Arlene Suda in the course of committing a theft of $3,000.00 at Annies Gameroom. On February 20, 2007, on motion of the Government, the charges against the defendant were dismissed without prejudice due to a lack of evidence.

## Other Arrests

| | Date of Arrest | Charge | Disposition |
|---|---|---|---|
| 77. | 6/18/02 | Terrorizing/Family Violence. Police Report 02-08277 | 05/9/03- Prosecution declined |

| 78. | Date of Arrest 11/30/03 | Charge Manufacturing of a Schedule I Controlled Substance(Marijuana)Police Report 03-19163 | Disposition 12/01/03- Prosecution declined |
|---|---|---|---|

# PART C—DEFENDANT'S CHARACTERISTICS

## Personal and Family Data

79. The defendant, Joshua Jerome Castro Ulloa was born on September 15, 1976 to Jose Atalig Ulloa, age 49, and Alvina Ulloa (nee Castro), age 48, in Tamuning, Guam. Mrs. Ulloa is employed as an Accounting Manager at the Army/Air Force Exchange Service at Andersen Air Force Base. Mr. Ulloa is a U.S. Army retiree and Port Authority superintendent. The defendant has three siblings: a sister, Lavina Cruz, age 26, who is a homemaker and a resident of Guam; a sister, Nikita Ulloa, age 19, who is a nursing student and a resident of Seattle, Washington; and a sister, Leilana Ulloa, age 17, who resides at home. The defendant's parents reside in Barrigada, Guam.

80. The defendant stated that his father wasn't around when he was growing up due to his military career. He described him as being strict and that he received counseling as an adolescent due to problems he had with his father. The defendant stated that he is not close to his father and it took several years to fix their relationship. He stated that he has always been close with his mother and siblings.

81. The defendant resided on Guam until age four years. After his father enlisted in the military, the family left island and saw different stations in Hawaii, New Jersey, and Germany over the years. As an adult, the defendant also resided in Kentucky and Louisiana during his own military stint between 1999 and 2000. He returned to Guam permanently in 2001.

82. The defendant's sister, Lavina Cruz, age 26 was interviewed for this report. She confirmed the information provided by the defendant. She stated that her brother is experiencing difficult times, but is committed to changing for the sake of his children. Mrs. Cruz stated that she knows that her brother is sorry and hopes that the court is lenient at sentencing so he has a chance to be with his children and family.

83. The defendant married Annabelle Rabano, age 33, in a civil ceremony on Guam in January 1999. The couple have two children: Alana Ulloa, age 9, and Joshua Ulloa, age 7. They divorced two years later on Guam in 2001. The defendant stated that his ex-wife is now remarried and resides in Utah with their children. He

19

stated that he could not recall his children's birth or his marriage and divorce dates. He does not keep regular contact with them. The defendant attributed his divorce to mutual incompatibility.

84. The defendant and Christine Duenas have been cohabitating since 2002 and they have three daughters: Jovina Duenas Ulloa, born on October 30, 2002; Jadene Duenas Ulloa, born on March 20, 2004; and Norma Duenas Ulloa, born on December 28, 2005.

85. The defendant's youngest child, Norma Duenas Ulloa is afflicted with a dwarfism condition and receives treatment at the Northern Regional Public Health Center. According to Child Protective Services, physicians were especially concerned with Norma's exposure to "ice" lab chemicals following the arrest although her tests were negative. It is emphasized that the defendant's methamphetamine manufacturing activity is not any cause of the daughter's condition.

86. The couple's relationship ended as a result of the offense. The defendant stated that Ms. Duenas is a good mother and that he wants to marry her someday. He has had minimal contact with Ms. Duenas after their Indictment. Prior to this offense, the defendant and Ms. Duenas agreed to giving guardianship of Jovina Duenas Ulloa, Jadene Duenas Ulloa, and Norma Duenas Ulloa to Mr. Ulloa's mother. On June 22, 2007, the Honorable Arthur R. Barcinas approved the guardianship to Alvina M.C. Ulloa. Mrs. Ulloa continues to have custody of the children with Child Protective Services oversight.

**Physical Condition**

87. The defendant stands at 5'4" and weighs approximately 160 pounds. He has brown, black hair and a medium complexion. He has a scar on his left forehead due to a motorcycle accident in 2007. The defendant is healthy, however, he stated that he suffers from periodic migraine headaches and sinus problem. He is not under the care of a physician or taking any prescription medication at this time.

**Mental and Emotional Health**

88. The defendant reported that he received mental health treatment when he was in the Army and stationed at Ft. Polk, Louisiana because of a suicide attempt by hanging. The defendant attributed his suicide attempt to personal issues that he declined to discuss. He stated that he also received periodic counseling between ages 14 to 17 when his family was stationed in New Jersey and Germany.

20

## Substance Abuse

89. The defendant completed the Superior Court of Guam's DUI alcohol education program on April 29, 2004.

90. The defendant admitted that he began using methamphetamine or "ice" in 1994 and used approximately one gram weekly until he was arrested for the instant offense. He began using marijuana at age 17 and last used in 2000. The defendant started drinking alcohol at age 16 and drank as much as a case of beer on the weekends.

## Education and Vocational Skills

91. The defendant stated that he attended George Washington high school located in Mangilao, Guam. He withdrew from the 12th grade in 1993 due to his girlfriend being pregnant. The defendant obtained his General Equivalency Diploma (GED) from Guam Community College in 1995. The defendant has vocational skills as a helicopter mechanic from the U.S. Army.

## Employment History

92. The defendant is unemployed. He was employed as a Tariff Technician for the Port Authority of Guam, Government of Guam from January 2007 to August 2007. He earned an hourly wage of $7.62. He resigned because of his drug problem.

93. The defendant was employed as an engineering technician for the Pacific Islands Club hotel from 2004 to 2005. He earned an hourly wage of $7.50. He resigned after being injured at work.

94. The defendant was employed as a warehouse manager for Pacific Western distributing company from 2001 to 2003. He earned an hourly wage of $6.50.

95. According to the National Personnel Records Center, the defendant enlisted in the U.S. Army on February 18, 1999 and received an Under Honorable Conditions discharge on March 18, 2000. The defendant reported that he was discharged at the rank of E-2/Private due to fighting with another soldier and a suicide attempt. He reported that his specialty was as a helicopter mechanic.

## Financial Condition: Ability to Pay

96. The defendant reported no assets. His liabilities include an outstanding Guam Memorial hospital bill of $200.00 for medical treatment and a Guam Waterworks Authority debt of $400.00 for water service. Prior to his arrest, the defendant

received $800.00 monthly food stamp subsidy and participated in the Guam Housing and Urban Renewal housing program. He is now wholly supported by his parents.

97. Based on the information provided it appears that the defendant is unable to pay the minimum fine.

## PART D—SENTENCING OPTIONS

### Cr. Case. No. 07-00111

#### Custody

98. The statutory sentence for Drug User in Possession of a Firearm, in violation of 18 USC 922(g)(3) and 924(a)(2) offense is a maximum of 10 years imprisonment. The offense is a Class C felony.

### Cr. Case No. 08-00013

#### Custody

99. The statutory sentence for Conspiracy to Manufacture Methamphetamine, in violation of 21 U.S.C.§§ 841(a)(1) and 846, is a maximum term of 40 years imprisonment with a mandatory minimum term of five years. 21 U.S.C. § 841(b)(1)(B). The offense is a Class B felony, 18 U.S.C. § 3559(a)(2)

### Cr. Case Nos. 07-00111 and 08-00013

100. **Guideline Provisions**: Based on a Total Offense Level of 28 and a Criminal History Category of III, the guideline range of imprisonment is 97 to 121 months. U.S.S.G. § 5C1.1(f) provides that if the applicable guideline range is in Zone D of the Sentencing Table, a sentence of imprisonment is required.

#### Impact of the Plea Agreement

101. The plea agreement in this case is made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. In exchange for the defendant's guilty pleas, the government agrees to dismiss Count II and III in CR 08-00013. The government will also recommend a sentence in accordance with the statutory penalty or minimum guideline imprisonment range. The defendant understands the penalties for his offenses. The defendant may avail himself of a U.S.S.G. § 5K1.1 motion if he provides substantial assistance to the government of other unlawful activities. The plea agreement contains a recitation of facts for purposes of the guidelines.

22

## Supervised Release

### Cr. Case. No. 07-00111

102. **Statutory Provisions:** If a term of imprisonment is imposed, a term of supervised release of at least three years may follow after release. 18 U.S.C. § 3583(b)(2).

103. **Guideline Provisions:** The authorized term shall be at least two years but not more than three years for a Class C felony. U.S.S.G. § 5D1.2(a)(2).

### Cr. Case No. 08-00013

104. **Statutory Provisions:** If a term of imprisonment is imposed, a term of supervised release of at least four years shall follow after release. 21 U.S.C. § 841(b)(1)(B).

105. **Guideline Provisions:** The authorized term shall be at least three years but not more than five years for a Class B felony. U.S.S.G. § 5D1.2(a)(1).

## Probation

### Cr. Case. No. 07-00111

106. **Statutory Provisions**: A sentence of probation is not precluded under 21 U.S.C. § 856(b). The authorized term of probation for a felony offense is not less than one year and not more than five years. 18 U.S.C. § 3561(c)(1).

### Cr. Case No. 08-00013

107. **Statutory Provisions**: A sentence of probation is precluded under 21 U.S.C. § 841(b)(1)(B).

### Cr. Case Nos. 07-00111 and 08-00013

108. **Guideline Provisions**: A sentence of probation is not authorized as the guideline range is in Zone D of the Sentencing Table U.S.S.G. § 5B1.1 comment. (n.2).

## Fines

### Cr. Case. No. 07-00111

109. **Statutory Provisions:** The maximum fine amount is $250,000. 18 U.S.C. § 3571(b)(3).

23

## Cr. Case No. 08-00013

110. **Statutory Provisions**: Pursuant to 21 U.S.C. § 841(b)(1)(B), the maximum fine is $2,000,000.

## Cr. Case Nos. 07-00111 and 08-00013

111. **Guideline Provisions**: Pursuant to U.S.S.G. § 5E1.2(c)(3), the fine range for a Total Offense Level of 28 is from $12,500 to $125,000. U.S.S.G. § 5E1.2(c)(4)(A) directs that the maximum fine does not apply if the defendant is convicted under a statute authorizing a maximum fine greater than $250,000. The maximum fine is $500,000.

112. Subject to the defendant's ability to pay, the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the U.S. Courts, dated May 6, 2008, suggests a monthly cost of $2,076.83 be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

### Special Assessment Fee

## Cr. Case Nos. 07-00111 and 08-00013

113. **Statutory Provisions**: There is a mandatory special assessment fee of $100 for each count of conviction. 18 U.S.C. § 3013(a)(2)(A).

114. **Guideline Provisions**: A special assessment fee must be imposed on a convicted defendant in the amount prescribed by statute. U.S.S.G. § 5E1.3. The defendant shall pay a $200 special assessment fee.

### Restitution

115. Restitution is not an issue in this case.

### Denial of Federal Benefits to Drug Traffickers and Possessors

116. Pursuant to 21 U.S.C. § 862 and U.S.S.G. § 5F1.6, the court may deny federal benefits to an individual convicted of distribution or possession of a controlled substance. Denial of federal benefits may mean any grant, contract, loan, professional license, or commercial license provided by an agency of the United

States or by appropriated funds of the United States but does not include any retirement, welfare, Social Security, health, disability, veterans benefits, public housing, other similar benefits, or any other benefit for which payments or services are required for eligibility. A drug trafficker can be denied benefits up to five years for a first conviction, up to ten years for a second conviction and permanently for a third. A drug possessor may be denied benefits for up to one year for a first conviction and up to five years for any subsequent convictions.

## PART E—FACTORS THAT MAY WARRANT DEPARTURE

117. The Government will request a downward departure pursuant to U.S.G. § 5K1.1 of the advisory sentencing guidelines, if it believes that the defendant provided substantial assistance.

118. Pursuant to U.S.S.G. §§ 4A1.3(a)(1) and 4A1.3(a)(2)(A) and (D), the defendant may warrant an upward departure since his Criminal History Category under-represents the seriousness of his criminal history.

## PART F—FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

119. None.

Respectfully submitted,

ROSSANNA VILLAGOMEZ-AGUON
Chief U.S. Probation Officer

By: STEPHEN P. GUILLIOT
U.S. Probation Officer

Reviewed by:

CHRISTOPHER J. DUENAS
U.S. Probation Officer Specialist 1

Date 1/26/09

**E X H I B I T ( B )**

**Office of the Attorney General**
**Alicia G. Limtiaco**
Attorney General of Guam
**Prosecution Division**
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3406 ● (671) 477-3390 (Fax)
www.guamattorneygeneral.com

Attorneys for the People of Guam

RECEIVED

JUL 17 2009

Received By: _____
DIRECTOR'S OFFICE

## IN THE SUPERIOR COURT OF GUAM
## HAGÅTÑA, GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CF006-08 |
| | GPD REPORT NO. 08-00650 |
| vs. | CRIMINAL CASE NO. CF508-07 |
| | GPD REPORT NO. 07-29429 |
| JOSHUA JEROME CASTRO ULLOA, | |
| DOB: 09/15/1976 | |
| Defendant. | |

## J U D G M E N T

On MARCH 24, 2009, came the attorney for the People, Assistant Attorney General JEFFREY A. MOOTS, and the Defendant appeared with ANA MARIA C. GAYLE, ESQ., counsel, and the Defendant having moved to change his pleas of NOT GUILTY to that of GUILTY of the offenses in CF006-08: of CHILD ABUSE (As a Third Degree Felony) (Count One), in violation of 9 GCA § 31.30(a)(2)(c) and (b), as contained in the indictment filed in this case; and in CF508-07: of First Charge of FORGERY (As a Third Degree Felony), in violation of 9 GCA §§ 46.10(a)(5) and (c) and 43.30(a), as amended, as contained in the superceding indictment filed in this case.

********** E X H I B I T ( B ) ************
PAGE 1:

Page 1
JUDGMENT - P. vs. JOSHUA JEROME CASTRO ULLOA
#s CF6-08.508-07 X:\Prosecution Division\Secretary\JUDGMENTS\ULLOA\JC CA FORGERY WITH EXHIBITS 4-08 508-07.wpd

Case 1:07-cr-00039 Document 152 Filed 12/06/10 Page 27 of 35

1    The Court informed the Defendant of the effect of the plea entered and asked him whether

2 he insists on his pleas or not.

3    The Defendant persisted on his pleas of GUILTY of the offenses of in CF006-08: CHILD

4 ABUSE (As a Third Degree Felony) (Count One) and in CF508-07: of First Charge of

5 FORGERY (As a Third Degree Felony).

6    The Court then addressed the Defendant personally and found that the pleas are made

7 voluntarily with an understanding of the nature of the charges and consequences of his pleas. The

8 Court further found to its satisfaction that there is a factual basis for the pleas.

9    The Court accepts Defendant's plea of GUILTY and based on his pleas, a JUDGMENT of

10 GUILTY is hereby entered. Sentencing was held on JUNE 18, 2009. Present at the sentencing

11 were Assistant Attorney General SHANE F. T. BLACK for the People, Defendant and Defendant's

12 counsel, STEPHEN P. HATTORI, ESQ.

13    WHEREFORE, IT IS HEREBY ORDERED as follows:

14    1.    That for the offenses of in CF006-08: CHILD ABUSE (As a Third Degree Felony)

15 (Count One) and in CF508-07: of First Charge of FORGERY (As a Third Degree Felony), the

16 Defendant, JOSHUA JEROME CASTRO ULLOA, is sentenced as follows:

17    a.    That as to the charge in CF6-08: of CHILD ABUSE (As a Third Degree

18        Felony) (Count One) and in CF508-07: of FORGERY (As a Third Degree

19        Felony) to be sentenced to *five (5) years* imprisonment at the Department of

20        Corrections on *each charge to be served concurrent one to another, all but two (2)*

         *years suspended, with credit for time served;*

21    b.    Defendant's local sentence can be served concurrently with any sentence he might

22        receive in the Federal District Court;

22    c.    That Defendant shall pay a fine of three hundred ($300.00) dollars, plus Court costs;

23    d.    Defendant shall be held liable for full restitution to the victim, *in CF508-07*, of his

24        actions, in the total amount to be determined at restitution hearing, pursuant to the

         limitations set in 9 G.C.A. § 80.50(e);

25    e.    Defendant shall pay said restitution in monthly installments to be arranged by the

26        Parole Services Division;

27    f.    Failure of the Defendant to follow all of his conditions of supervised parole may result

28        in a hearing to revoke parole at which time the Parole Board may impose the

\*\*\*\*\*\*\*\*\*\* E X H I B I T ( B ) \*\*\*\*\*\*\*\*\*\*\*\*\*
Page 2                                            PAGE 2.
JUDGMENT, P v. JOSHUA JEROME CASTRO ULLOA

Case 1:08-cr-00013   Document 152   Filed 12/06/10   Page 28 of 35

remainder of his parole term in prison or the remainder of his original sentence as determined from the date of conviction;

g. That the Defendant shall be placed on *three (3) years* supervised parole, *concurrent with federal supervising*;

h. The Attorney General and Defendant agree that when the Defendant is released on parole, that the following conditions shall be recommended to the Parole Board, in addition to any imposed by the Parole Board pursuant to 9 GCA § 80.80:

   i. Defendant's contact with the victims, *D. C. (Age 9), A. C. (Age 7), J. J. U. (Age 5), J. M. U. (Age 3), N. U. (Age 1), K. G. (Age 17)* shall be pursuant to all Court orders in JP58-08; and

   ii. Defendant shall not come within five hundred (500) feet of the victim, *Celebrity Bakery.*

2. Pursuant to the Plea Agreement, the Court hereby dismisses the remaining charges in CF6-08: of CHILD ABUSE (As a Third Degree Felony) (*Count Two, Count Three, Count Four, Count Five and Count Six*) filed in the indictment on January 17, 2008; and the remaining charges in CF508-07: of FORGERY (As Third Degree Felony) and CONSPIRACY TO COMMIT FORGERY (As a Third Degree Felony) filed in the superceding indictment on December 12, 2008.

SO ORDERED, NUNC PRO TUNC, to MARCH 24, 2009 this _____ day of JUL 1 0 2009 _____, 2009.

HONORABLE MICHAEL J. BORDALLO
JUDGE, SUPERIOR COURT OF GUAM

Submitted by:                                   Approved as to form:

SHANE F. T. BLACK                    STEPHEN P. HATTORI, ESQ.
Assistant Attorney General              Attorney for Defendant

Dated: JUNE 26, 2009                    Dated: 7 - 6 - 09

********** E X H I B I T ("B") ************
PAGE 3.

Page 3
JUDGMENT - P. vs. JOSHUA JEROME CASTRO ULLOA
#s CF6-08.508-07   X:\Prosecution Division\Secretary\rippe\JUDGMENTS\ULLOA\JUDGMENT - P. vs. ULLOA FORGERY/CHILD ABUSE .wpd
Case 1:06-cr-00019   Document 152   Filed 12/06/10   Page 29 of 35

**E X H I B I T  ( C )**

CHAPTER 31
OFFENSES AGAINST THE FAMILY

§ 31.10. Bigamy; Defined & Punished.
§ 31.15. Incest: Defined & Punished.
§ 31.20. Abortion.
§ 31.21. Illegal Abortions Punished.
§ 31.22. Refusal to Participate in Abortion.
§ 31.30. Child Abuse; Defined & Punished.
§ 31.35. Reporting of Suspected Child Abuse to DPHSS.
§ 31.37. Registry of Cases of Suspected Child Abuse Reported to DPHSS.
§ 31.40. Abuse of an Incompetent: Defined & Punished.
§ 31.45. Failure to Provide; Defined & Punished.
§ 31.50. Surety for Support.
§ 31.55. Fine Imposed May be Used for Support.
§ 31.60. Criminal Spouse Abuse: Penalty. [Repealed]
§ 31.65. Curfew Hours for Minors.

COMMENT: Chapter 31 encompasses a wide variety of crime from bigamy and incest through an attempt to control abortions, (see Comment to § 31.20), to child abuse. The majority of this Section is a restatement of former Guam law with improvement and a modernization of language.

§ 31.10. Bigamy; Defined & Punished.

(a) A married person is guilty of bigamy, a misdemeanor, if he contracts or purports to contract another marriage, unless at the time of the subsequent marriage:

(1) the defendant believes that the prior spouse is dead;

(2) the defendant and the prior spouse have been living apart for five (5) consecutive years throughout which the prior spouse was not known by the defendant to be alive;

(3) a court has entered a judgment purporting to terminate or annul any prior disqualifying marriage, and the defendant does not know that judgment to be invalid; or

(4) the defendant reasonably believes that he is legally eligible to remarry.

COL050108

(b) A person is guilty of bigamy if he contracts or purports to contract marriage with another knowing that the other is thereby committing bigamy.

SOURCE: G.P.C. §§ 281-284; ˚M.P.C. § 230.1.

COMMENT: The crime of bigamy is reduced by this Section from a felony to a misdemeanor, thus increasing the likelihood of prosecution as Attorneys General on Guam have felt that felony charges were too severe under the facts usually presented. It should be noted that the other spouse is also guilty of bigamy if she/he contracts, or reports the contract of marriage, knowing that his or her spouse will be

****** E X H I B I T ( C ) ***
PAGE 1.

guilty of bigamy because of the spouse's relationship with another person.
§ 31.15. Incest: Defined & Punished.
A person is guilty of incest, a misdemeanor, if he knowingly marries or
cohabits or has sexual intercourse with an ancestor or descendant, a brother
or sister of the whole or half blood or an uncle, aunt, nephew or niece of the
whole blood. Cohabit means to live together under the representation or
appearance of being married. The relationships referred to herein include
blood relationships without regard to legitimacy, and relationship of parent
and child by adoption.
SOURCE: G.P.C. § 285; Civil Code § 59; *M.P.C. § 230.2.
COMMENT: Again, § 31.15 continues the substance of Penal Code § 235. In
addition, § 31.15 clarifies two (2) issues not covered by prior law, namely legitimacy
is irrelevant where the concern is with the bloodline, and adoptive relationships are
included as equivalent of natural parents to their children and vice versa.
The staff of the Law Revision Commission suggested that it would be
appropriate to classify the crime of incest as a misdemeanor and the Commission
concurred.
§ 31.20. Abortion.
(a) Abortion means the termination of a human pregnancy with an
intention other than to produce a live birth or to remove a dead fetus.
(b) An abortion may be performed:
(1) by a physician licensed to practice medicine this Territory or
by a physician practicing medicine in the employ of the government of
the United States;
(2) in the physician's adequately equipped medical clinic or in a
hospital approved or operated by the United States or this Territory;
and
COL050108
9 GCA CRIMES AND CORRECTIONS
CH. 31 OFFENSES AGAINST THE FAMILY
3
(3) (A) within 13 weeks after the commencement of the
pregnancy; or
(B) within 26 weeks after the commencement of the
pregnancy if the physician has reasonably determined using all
available means:
(i) that the child would be born with a grave physical or
mental defect; or
(ii) that the pregnancy resulted from rape or incest; or
(C) at any time after the commencement of pregnancy if the
physician reasonably determines using all available means that
there is a substantial risk that continuance of the pregnancy would
endanger the life of the mother or would gravely impair the
physical or mental health of the mother.
SOURCE: Enacted in 1978 as part of the original Criminal & Correctional Code.
COMMENT: The Law Revision Commission made no recommendation as to the
regulation of abortion. This section was added by the Legislature, which committed a
serious error in its adoption (since rectified). Initially (1978), no sanctions were
provided for the performing of illegal abortions. However, this has been changed in
later sections of this Chapter.
COURT DECISIONS: Sections 31.20, 31.21, 31.22 and 31.33, as reenacted by P.L.
20-134, were declared null and void as contrary to the U.S. Constitution. As a result,
the original sections of law were reinstated. Guam Society of Obstetricians &
Gynecologists, et al. v. Ada, Governor of Guam, et al., No. 90-16706, C.A.9 (1992),
962 F.2d 1366.
NOTE: Because of the foregoing decision, the Compiler will report as the law the
statutes as they existed prior to P.L. 20-134. However, the statutes which were

****** E X H I B I T ( C ) ***
PAGE 2.

invalidated by the Ninth Circuit are as follows:

§ 31.20. Abortion: Defined. Abortion means the purposeful termination of a human pregnancy after implantation of a fertilized ovum by any person including the pregnant woman herself with an intention other than to produce a live birth or to remove a dead unborn fetus. Abortion does not mean the medical intervention in (i) an ectopic pregnancy, or (ii) in a pregnancy at any time after the commencement of pregnancy if two (2) physicians who practice independently of each other reasonably determine using all available means that there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the health of the mother, any such termination of pregnancy to be subsequently reviewed by a peer review committee designated by the Guam Medical Licensure Board, and in either case such an operation is performed by a physician licensed to practice medicine in Guam or by a physician practicing medicine in the employ of the government of the United States, in an adequately equipped medical clinic or in a hospital approved or operated by the government of the United States or of Guam.

9 GCA CRIMES AND CORRECTIONS
CH. 31 OFFENSES AGAINST THE FAMILY

4

§ 31.21. Providing or Administering Drug or Employing Means to Cause an Abortion. Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to cause an abortion of such woman as defined in § 31.20 of this Title is guilty of a third degree felony. In addition, if such person is a licensed physician, the Guam Medical Licensure Board shall take appropriate disciplinary action.

§ 31.22. Soliciting and Taking Drug or Submitting to an Attempt to Cause an Abortion. Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever with intent thereby to cause an abortion as defined in § 31.20 of this Title is guilty of a misdemeanor.

§ 31.23. Soliciting to Submit to Operation, Etc., to Cause an Abortion. Every person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion as defined in § 31.20 of this Title is guilty of a misdemeanor.

§ 31.21 Illegal Abortions Punished.
Any person performing an abortion in circumstances other than permitted by § 31.20 shall be guilty of a third degree felony.
SOURCE: Added by P.L. 14-122 (4/19/78).
COMMENT: This Section was added after it was discovered that the Legislature, while regulating abortions, had neglected to provide any penalty for performing abortions in situations other than those permitted by law.

§ 31.22 Refusal to Participate in Abortion.
(a) No employer or other person shall require a physician, a registered nurse, a licensed vocational nurse, or any person employed or with staff privileges at a hospital, facility or clinic to directly participate in the induction or performance of an abortion, if such employee or other person has filed a written statement with the employer or the hospital, facility or clinic indicating a moral, ethical or religious basis for refusal to participate in the abortion.

No such employee or other person with staff privileges in a hospital, facility, or clinic shall be subject to any penalty or discipline by reason of his refusal to participate in an abortion. No such employee of a hospital, facility or clinic which does not permit the performance of abortions, or person with staff privileges therein, shall be subject to any penalty or discipline on account of such person's participation in the performance of an abortion in other than such hospital, facility or clinic.

9 GCA CRIMES AND CORRECTIONS

****** E X H I B I T ( C ) ***
PAGE 3.

No employer shall refuse to employ any person because of such person's refusal for moral, ethical or religious reasons to participate in an abortion, unless such person would be assigned in the normal course of business of any hospital, facility or clinic to work in those parts of the hospital, facility or clinic where abortion patients are cared for. No provision of this Chapter prohibits any hospital, facility or clinic which permits the performance of abortions from inquiring whether the employee or prospective employee would advance a moral, ethical or religious basis for refusal to participate in an abortion before hiring or assigning such a person to that part of a hospital, facility or clinic where abortion patients are cared for.

The refusal of a physician, nurse, or any other person to participate or aid in the induction or performance of an abortion pursuant to this subsection shall not form the basis of any claim for damages.

(b) No hospital, facility, or clinic shall refuse staff privileges to a physician because of such physician's refusal to participate in the performance of an abortion for moral, ethical, or religious reasons.

(c) Nothing in this Chapter shall require a non-profit hospital or other facility or clinic which is operated by a religious corporation or other religious organization or any administrative officer, employee, agent, or member of the governing board thereof, to perform or permit the performance of an abortion in such facility or clinic or to provide abortion services. No such non-profit facility or clinic organized or operated by a religious corporation or other religious organization, nor its administrative officers, employees, agents, or members of its governing board shall be liable, individually or collectively, for failure or refusal to participate in any such act.

The failure or refusal of any such corporation, unincorporated association or individual person to perform or to permit the performance of such medical procedures shall not be the basis for any disciplinary or other recriminatory action against such corporations, unincorporated associations, or individuals. Any such facility or clinic which does not permit the performance of abortions on its premises shall post notice of such proscription in an area of such facility or clinic which is open to patients and prospective admittees.

(d) This section shall not apply to medical emergency situations and spontaneous abortions.

9 GCA CRIMES AND CORRECTIONS

Any violation of this section is a misdemeanor.

SOURCE: Added by P.L. 14-122 (4/19/78).

§ 31.30. Child Abuse; Defined & Punished.

(a) A person is guilty of child abuse when:

(1) he subjects a child to cruel mistreatment; or

(2) having a child in his care or custody or under his control, he:

(A) deserts that child with intent to abandon him;

(B) subjects that child to cruel mistreatment; or

(C) unreasonably causes or permits the physical or, emotional health of that child to be endangered.

****** E X H I B I T ( C ) ***
PAGE 4.

(b) Child abuse is a felony of the third degree when it is committed
under circumstances likely to result in death or serious bodily injury.
Otherwise, it is a misdemeanor.
SOURCE: M.P.C. § 230.4; *Cal. § 980 (1971); Mass. ch. 273, §§ 1, 4; N.J. § 2C:24-
4.
CROSS-REFERENCES: G.P.C. §§ 270, 271, 271a, 273, 273c; See also § 272.
COMMENT: § 31.30 supersedes all or parts of the Guam Penal Code dealing with the
same subject. The extent of liability under this Section depends upon the relationship
of the defendant to the child and the degree to risk to the child. Any person who
subjects a child to cruel mistreatment is guilty of a crime. Persons having the care or
responsibility for a child are held to a high standard of care. In addition to the obvious
crimes of desertion or cruel mistreatment, parents or guardians may not unreasonably
cause or permit a child to be endangered.
This § 31.30(2)(C) recognizes the duty imposed upon parents or guardians to
care for a child's emotional, as well as physical needs.
§ 31.35. Reporting of Suspected Child Abuse to Department of Public
Health and Social Services.
[Repealed]
SOURCE: G.P.C. § 273b; Cal. § 982 (1971). Repealed by P.L. 14-137, effective
07/25/78.
§ 31.37. Registry of Cases of Suspected Child Abuse Reported to
Department of Public Health and Social Services.
[Repealed]
SOURCE: G.P.C. § 273e. Repealed by P.L. 14-137, effective 07/25/78.
COL050108

§ 31.40. Abuse of An Incompetent; Defined & Punished.
(a) A person is guilty of abuse of an incompetent when:
(1) he subjects an incompetent to cruel mistreatment; or
(2) having an incompetent in his care of custody or under his
control, he:
(A) deserts that incompetent with intent to abandon him;
(B) subjects that incompetent to cruel mistreatment; or
(C) unreasonably causes or permits the physical or emotional
health of that incompetent to be endangered.
(b) As used in this Section, incompetent means a person who is unable
to care for himself because of old age, or because of physical or mental
illness, disease or defect.
(c) Abuse of an incompetent is a felony of the third degree when it is
committed under circumstances likely to result in death or serious bodily
injury. Otherwise, it is a misdemeanor.
SOURCE: G.P.C. § 361; Compare M.P.C. § 230.5; *Cal. § 984 (1971); N.J. § 2C:24-
5.
COMMENT: § 31.40 supersedes former Penal Code § 361 and extends the same
protection to incompetents that § 31.40 provides for children.
§ 31.45. Failure to Provide; Defined & Punished.
(a) A person is guilty of failure to provide when having a spouse, child
or indigent parent whom he is legally obliged to support, he knowingly fails

****** E X H I B I T ( C ) ****
PAGE 5.